NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROBERT SMALL, <br><br> Plaintiff, <br><br> v. <br><br> CHARLES WARREN, ANTONIO CAMPOS, LIEUTENANT GANESH, SGT. SEXTON, WILLIAM HAYES, NON-REGULAR OFFICER #1, JOHN DOE #s 1–100, PAUL AZARA, STACY CHASE, SHARON NEARY, NYA BOOTH, ROBERT HAMPE, SEAN ABRAMS, THOMAS KENNEDY, BENJAMIN DANIELS, MICHAEL PTZANSKI, WILLIE BONDS, JENNIFER FARESTAD, NEW JERSEY STATE PRISON, NEW JERSEY DEPARTMENT OF CORRECTIONS, UNIVERSITY CORRECTIONAL HEALTH CARE, ABU AHSAN, and SOUTH WOODS STATE PRISON <br><br> Defendants. | Civ. No. 15-8886 <br><br> **OPINION** |

THOMPSON, U.S.D.J.

## **INTRODUCTION**

This matter comes before the Court upon a Motion for Preliminary Injunction by Plaintiff Robert Small ("Plaintiff"). (ECF No. 35.) Defendant New Jersey Department of Corrections ("Defendant") opposes. (ECF No. 53.) The Court has decided this Motion based on the written submissions of the parties and oral argument held on October 11, 2018. For the reasons stated herein, Plaintiff's Motion is granted.

1

**BACKGROUND**

Plaintiff is a prisoner at South Woods State Prison ("SWSP"). (Mot. at 3, ECF No. 35-1.) He has paraplegia, cannot control his bowel movements, must manually disimpact his bowels, and relies on adult diapers. (*Id.* at 4.) He has filed suit alleging violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*; the Eighth Amendment; and the Fourteenth Amendment. (Am. Compl. ¶¶ 71–98, ECF No. 37.) Plaintiff currently seeks a preliminary injunction ordering that Defendant provide him with additional daily medical supplies (nine adult diapers, eighteen disposable underpads (a.k.a. "Chux"), disposable latex gloves, trash bags to dispose of used diapers and gloves, and twenty-one sanitary wet wipes); provide him with an appropriate medical bed; arrange for the prompt pickup of trash bags containing used diapers, upon Plaintiff's request; and arrange for a medical examination by a licensed physician. (Proposed Order, ECF No. 57-2.)

The medical supplies provided to Plaintiff have changed over time. Previously, Plaintiff was incarcerated in the medical unit of SWSP, and prior to that he was incarcerated in the New Jersey State Prison. (Prelim. Inj. Hr'g, ECF No. 59.) During those periods, Plaintiff was provided with medical supplies similar to what he now requests in the Motion. (*Id.*) In March 2018, Defendant decided to transfer Plaintiff to general population at SWSP, but Plaintiff refused. (*Id.*) Plaintiff was therefore moved to administrative segregation at SWSP in March 2018. (*Id.*) Starting that month, Plaintiff's daily rations were reduced. (Pl.'s Decl. ¶¶ 7–8, ECF No. 35-2.) On June 5, 2018, Plaintiff's daily supply of diapers was reduced from nine to six. (*Id.* ¶ 8.) As of September 2018, and after a telephonic Court hearing, the daily diaper allowance was increased from four to six, where it currently stands. (Simeone Letter, ECF No. 52.)

Additionally, Defendant attests that Plaintiff currently receives one glove at a time, which

he can exchange for a clean one as needed; one trash bag after each meal; and six sanitary wipes per day. (*Id.*; Def.'s Br. at 3–4, ECF No. 53.) According to Defendant, prisoners are not given multiple gloves "to reduce the risk inmates use them for inappropriate purposes," and prisoners are not given multiple trash bags "due to the concerns of security and safety as they can be used to facilitate a suicide attempt." (Def.'s Br. at 3–4.) Defendant states that prisoners in administrative segregation pose a heightened risk of suicide. (Prelim. Inj. Hr'g.) No evidence has been presented to the Court that Plaintiff himself has a heightened suicide risk or is likely to distribute bags or gloves to other prisoners. (*Id.*)

Plaintiff seeks a medical examination by a licensed physician. (*Id.*) The parties agree that an examination by a doctor is warranted, but Defendant maintains that an examination by a nurse practitioner is procedurally the first step before a patient is referred to a physician. (*Id.*) Plaintiff has repeatedly refused to be examined by the nurse practitioner. (Def.'s Br., Ex. B.)

Plaintiff filed this Motion for a Preliminary Injunction on August 1, 2018. An Order from the Court provided a briefing schedule (ECF No. 40), and the matter is presently before the Court.

## **LEGAL STANDARD**

In order to obtain a preliminary injunction, the moving party must show: "(1) a reasonable probability of eventual success in the litigation, . . . (2) that it will be irreparably injured . . . if relief is not granted . . . (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d. Cir. 2017) (citing *Del. R. Port Auth. v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974)). Then, "a district court—in its sound discretion—should balance those four factors so long as the party seeking the injunction meets the threshold on the

first two." *Id.* (citing *Oburn v. Shapp*, 521 F.2d 142, 147 (3d Cir. 1975)). The moving party must show a "significantly better than negligible but not necessarily more likely than not" ability to win on the merits and that "it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Id.* at 179 (collecting cases). "How strong a claim on the merits is enough depends on the balance of the harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief." *Id.* at 179 (citing *Hoosier Energy Rural Elec. Coop. Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009)). The court retains "the traditional flexibility to granting interim equitable relief in which the district court has full discretion to balance the four factors once gateway thresholds are met." *Id.* at 178 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008)). "[N]o test for considering preliminary equitable relief should be so rigid as to diminish, let alone disbar, discretion." *Id.*

## **DISCUSSION**

### I. **Probability of Success on the Merits**

Plaintiff's Complaint alleges, *inter alia*, violations of the Cruel and Unusual Punishment Clause of the Eighth Amendment and Title II of the ADA. (Am. Compl. ¶¶ 71–75, 80–90.) As to the former, "[t]he Eighth Amendment imposes upon prison officials a duty to provide humane conditions of confinement. For the conditions of confinement to rise to the level of an Eighth Amendment violation, they must deny the minimal civilized measure of life's necessities. Unsanitary conditions can be cruel and unusual." *Allah v. Bartkowski*, 574 F. App'x 135, 138 (3d Cir. 2014) (internal citations and quotation marks omitted). As to the latter, ADA regulations require that prisons be "readily accessible to and usable by individuals with disabilities." 28 C.F.R. §§ 35.150, 35.104; *Yeskey v. Pa. Dep't of Corr.*, 118 F.3d 168, 172 (3d Cir. 1997).

Expert medical testimony is not required where deficiency in the conditions of confinement would be obvious to a layperson. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 536 (3d Cir. 2017). The common experience of human existence allows the Court to determine whether a prisoner's condition is "incompatible with the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (internal quotation marks omitted).

In this case, Plaintiff is paraplegic and requires certain basic supplies to disimpact his bowels on a regular basis. He was previously provided with nine diapers per day, and he claims that he still needs nine. He also asks for other supplies—disposable underpads, latex gloves, trash bags, and sanitary wipes—all in amounts comparable to what he received earlier this year when he was housed in the SWSP medical unit. Defendant has not produced any evidence showing that Plaintiff's medical needs have changed since February when he was provided with these items in higher quantities.[1] Defendant also has not produced any evidence that Plaintiff has engaged with narcotics in the prison, given supplies to other prisoners, or used supplies for any unintended purpose in the past.[2] The Court therefore concludes that Plaintiff's requests for these supplies is reasonable, and that provision of these supplies is necessary to maintain basic sanitary conditions.

Plaintiff is also entitled to a medical examination, given the character of his disability.

---

[1] Additionally, the current system—where Defendant is given one glove at a time to be swapped out as needed—strikes the Court as an unreasonably convoluted solution to this problem, especially given Plaintiff's allegation that he must leave a dirty glove on the floor while waiting for someone to come by to give him a new one. (Reply Br. at 6, ECF No. 57.)

[2] Defendant contends that Plaintiff has hoarded soiled diapers and other supplies in his cell. (Def.'s Br., Ex. B.) Now that Plaintiff will be provided with trash bags to dispose of used diapers, the Court expects that this problem will not recur. Because sanitary conditions are the goal and the expectation of today's decision, the Court would consider hoarding of soiled diapers to be a violation of its Order.

However, it is reasonable for a nurse practitioner or other qualified medical professional to conduct an initial screening as a prelude to examination by a physician or specialist. Plaintiff cannot reject this initial step or designate which nurse practitioner will be assigned, an action which has evidently been a stumbling block in resolving this case.

Plaintiff requests a medical bed. Unlike the supplies listed above, which are needed for everyday hygiene, a medical bed would likely be provided only for certain medical conditions. Therefore, whether Plaintiff requires such a bed is best determined by a physician. For this reason, the Court awaits a physician's determination as to whether a medical bed is necessary. Accordingly, the Court finds that Plaintiff has a reasonable probability of success on the merits as to almost all of his requests.

Separately, Plaintiff's past demands to remain in the medical unit are misguided. A medical unit is understandably reserved for medical emergencies or prisoners requiring certain levels of medical care. However, Plaintiff should not be punished or placed in administrative segregation for seeking hygienic supplies, especially If they were provided in previous phases of his incarceration.

## II. Irreparable Injury

As just discussed, Plaintiff has a reasonable likelihood of demonstrating that he is being denied the conditions of basic hygiene. Such a lack of basic needs is likely to pose both medical and dignitary harms to Plaintiff. These types of harms are not reparable with monetary compensation. The Court therefore finds that Plaintiff would suffer irreparable injury if the Court did not issue a preliminary injunction.

## III. Possibility of Harm to Other Interested Persons

Granting the Motion is unlikely to pose significant monetary costs to Defendant.

Defendant raises the possibility, however, that providing Plaintiff with the supplies he requests would pose hygienic and security risks. But there has been no showing of misuse, risk of suicide, or other security concerns. Inasmuch as harm to Defendant and other interested persons is speculative, this factor provides support for the conclusion that a preliminary injunction is appropriate.

## IV. The Public Interest

No significant public interest is implicated in this case.

## CONCLUSION

Plaintiff has demonstrated a reasonable probability of success on the merits and irreparable injury if a preliminary injunction is not issued, and the balance of the four factors tips in Plaintiff's favor.[3] Therefore, the Court will issue a preliminary injunction. An appropriate Order will follow.

Date:   10/12/2018                              /s/ Anne E. Thompson
                                                ANNE E. THOMPSON, U.S.D.J.

---

[3] Rule 65(c) requires the moving party to give security. But the Court may waive the requirement where a preliminary injunction would pose no monetary harm to the enjoined party, *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 426 (3d Cir. 2010), where the balance of equities weighs overwhelmingly in the movant's favor, *Elliott v. Kiesewetter*, 98 F.3d 47, 60 (3d Cir. 1996), or where the suit enforces important federal rights, *Temple University v. White*, 941 F.2d 201, 220 (3d Cir. 1991). Given that this Motion poses very little monetary cost to Defendant and enforces Plaintiff's basic rights to decent sanitary conditions while incarcerated, such security is not required in this case.