NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ROBERT SMALL,

        Plaintiff,

v.

CHARLES WARREN, *et al.*,

        Defendants.

Civ. No. 15-8886

**OPINION**

THOMPSON, U.S.D.J.

# INTRODUCTION

This matter comes before the Court upon the Second Motion for Preliminary Injunction filed by Plaintiff Robert Small ("Plaintiff"). (ECF No. 84.) Defendants Mervin Ganesh, Carmen Sexton, William Hayes, Michael Ptaszenski, New Jersey State Prison, South Woods State Prison ("SWSP"), and New Jersey Department of Corrections ("NJDOC") (collectively, "State Defendants") oppose. (ECF No. 87.) The Court has decided this Motion based on the written submissions of the parties and oral argument held on May 15, 2019. For the reasons stated herein, Plaintiff's Motion is denied.

# BACKGROUND

Plaintiff is a paraplegic prisoner at Defendant SWSP. (Mot. at 2, ECF No. 84-1.) He has filed suit alleging discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; unlawful retaliation under the ADA, § 12203(a); cruel and unusual punishment in violation of the Eighth Amendment; and due process violations under the Fourteenth Amendment. (Am. Compl. ¶¶ 71–98, ECF No. 37.) The Court granted a preliminary injunction on October 12, 2018, requiring that Defendant NJDOC provide Plaintiff with diapers, underpads,

1

gloves, trash bags, and wet wipes; arrange for prompt pickup of used trash bags; and arrange a medical examination of Plaintiff. (Opinion, ECF No. 60; Order, ECF No. 61.)

Plaintiff now moves for a second preliminary injunction to require Defendants NJDOC and SWSP to provide him daily access to showers; arrange for prompt pickup of soiled diapers (at least three times per day); provide him adequate access to recreation time, the cellblock kiosk, electricity in his cell, and the signup list for use of the telephone. (Proposed Order, ECF No. 84-3.) He also seeks to enjoin all Defendants from future acts of retaliation. (*Id.*) Finally, Plaintiff seeks attorney's fees incurred in preparing the Motion for Preliminary Injunction. (*Id.*)

No evidence was presented at the May 15, 2019 hearing. The Court therefore relies on two Certifications: one from Plaintiff (ECF No. 84–2), and the other from Correctional Police Major Ronald Tomlin on behalf of State Defendants (ECF No. 87-2). These two Certifications present diametrically opposed sets of facts.

According to Plaintiff, he has not been permitted to shower often enough to meet his medical needs. (Small Decl. ¶¶ 4–6.) He claims that he did not shower at all from December 14, 2018 to January 8, 2019. (*Id.* ¶¶ 6, 12.) According to State Defendants, Plaintiff, like all other inmates in Administrative Segregation, is offered one shower every two days, but Plaintiff has refused showers. (Tomlin Decl. ¶¶ 3–7, ECF No. 87-2.) No medical evidence was provided to demonstrate how frequently Plaintiff needs to shower.

Plaintiff claims that he has been denied recreation time out of his cell, making it impossible to contact his attorney or family, to file grievances, or to contact prison administration. (Small Decl. ¶¶ 8–11.) State Defendants aver that Plaintiff has not been denied recreation time; he is offered the same recreation time as other similarly situated inmates. (Tomlin Decl. ¶¶ 10–14.) On one occasion, Plaintiff refused recreation time. (*Id.* ¶ 15.) Plaintiff

2

can manually file grievances outside of recreation time and has access to prison administration outside of recreation time. (*Id.* ¶¶ 16–17.)

Plaintiff also alleges that State Defendants have turned off the electrical outlet in his cell, making it impossible for him to use his word processor to review legal documents. (Small Decl. ¶¶ 14–22.) In response, State Defendants assert that the electricity in Plaintiff's cell is linked to other cells, so electricity cannot be turned off only in his cell. (Tomlin Decl. ¶ 18.) State Defendants also claim that Plaintiff has complained of his electricity being off when it was visibly on. (*Id.* ¶¶ 21–22.)

According to Plaintiff, trash bags containing soiled diapers are usually picked up only once per day, which is not frequent enough to prevent them from piling up in the cell. (Small Decl. ¶¶ 26–28.) According to State Defendants, trash bags are collected three times per day. (Tomlin Decl. ¶ 8.)

Plaintiff also complains that, while other inmates are allowed to sign up for calls on Fridays, he has not been allowed to sign up for telephone calls. (Small Decl. ¶ 30.) State Defendants deny this; according to them, Plaintiff has the same opportunity to sign up for telephone calls as other inmates. (Tomlin Decl. ¶ 31.) State Defendants also allege that Plaintiff typically "responds in a negative manner" when offered to sign up for a phone call, and Plaintiff has been refusing phone calls. (*Id.* ¶¶ 31–34.)

Additionally, Plaintiff alleges that his legal mail has not been opened in front of him as required by Defendant NJDOC policy. (Small Decl. ¶ 29.) However, State Defendants claim that his legal mail is opened in front of him, and that on more than one occasion he has refused to sign for his legal mail. (Tomlin Decl. ¶¶ 26, 29.)

Plaintiff recounts that on December 8, 2018, Officer T. Jackson, in the presence of other

3

officers, told Plaintiff, "[Expletive] you and your lawsuits. . . . I am not letting you go to rec[reation], put that in your lawsuit." (Small Decl. ¶ 3 (alterations in original).) State Defendants say that the alleged incident is currently being investigated. (Tomlin Decl. ¶ 34.)

Plaintiff claims that the actions described above have been taken in retaliation against him for asserting his rights. State Defendants claim that Plaintiff is treated the same as all other Plaintiffs in Administrative Segregation and that Plaintiff has deliberately accrued charges to stay in Administrative Segregation rather than be moved to General Population. Plaintiff's counsel represented that many of the harms alleged above were remedied after the present Motion was filed. State Defendants' counsel claims that his clients did not know about the Motion for some time and therefore could not have acted in response to it.

Plaintiff filed the present Second Motion for Preliminary Injunction on January 8, 2019. (ECF No. 84.) Defendants opposed on January 22, 2019. (ECF No. 87.) Plaintiff replied on January 28, 2019. (ECF No. 88.) The hearing on the Motion was originally scheduled for February 4, 2019 (ECF entry dated 01/09/2019) but was rescheduled several times (ECF entries dated 01/22/2019, 02/15/2019, 02/25/2019, 04/24/2019). A hearing was eventually held on May 15, 2019.

## **LEGAL STANDARD**

In order to obtain a preliminary injunction, the moving party must show: "(1) a reasonable probability of eventual success in the litigation . . . (2) that it will be irreparably injured . . . if relief is not granted . . . (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d. Cir. 2017) (citing *Del. R. Port Auth. v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974)). Then, "a district court—in its sound discretion—should

balance those four factors so long as the party seeking the injunction meets the threshold on the first two." *Id.* (citing *Oburn v. Shapp*, 521 F.2d 142, 147 (3d Cir. 1975)). The moving party must show a "significantly better than negligible but not necessarily more likely than not" ability to win on the merits and that "it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Id.* at 179 (collecting cases). "How strong a claim on the merits is enough depends on the balance of the harms: the more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief." *Id.* at 179 (citing *Hoosier Energy Rural Elec. Coop. Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009)). The court retains "the traditional flexibility to granting interim equitable relief in which the district court has full discretion to balance the four factors once gateway thresholds are met." *Id.* at 178 (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008)). "[N]o test for considering preliminary equitable relief should be so rigid as to diminish, let alone disbar, discretion." *Id.*

## DISCUSSION

### I. Plaintiff Has Not Demonstrated a Probability of Success on the Merits

The ADA states that, "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). ADA retaliation claims are evaluated using the *McDonnell-Douglas* burden-shifting framework. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997) (citing *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997)). As a first step, the plaintiff must demonstrate that (1) he took part in a protected activity, (2) the defendant took an adverse action against him, and (3) there is a causal

connection between the protected activity and the adverse action. *Id.*

In this case, the Court cannot conclude that Plaintiff has a reasonable likelihood of success on the merits of his ADA claim. The Court has been presented with two starkly different declarations: one by Plaintiff claiming that various adverse actions have been taken against him, and the other by a representative of State Defendants denying that these adverse actions occurred. The two declarations cannot both be correct because they contradict each other in myriad ways, and the Court has no way to assess their credibility. State Defendants claim that they have institutional records showing that Plaintiff refused showers on different days; these records have not been presented to the Court. Moreover, neither party elected to examine any witnesses at the May 15, 2019 hearing. Without an evidentiary hearing, a conclusion that Plaintiff's recounting of the facts is the correct one would be unwarranted.

Moreover, as was discussed during the May 15, 2019 hearing, the parties are still conducting written discovery, and no depositions have been scheduled. With this dearth of evidence, the Court lacks a reasonable basis to conclude that Plaintiff is likely to succeed on his claims. Given the medical realities of this case, there is a serious need for an accelerated discovery schedule. Discovery ought to be completed as quickly as possible so that the facts of this case can be brought to trial and weighed by a jury without delay.

## II. Plaintiff Has Not Demonstrated Irreparable Injury

The previous section described the conflict as to basic facts that makes it impossible for the Court to determine that Plaintiff has a reasonable probability of success on the merits. This same abyss permeates the Court's determination of the irreparable injury prong. Without some way to determine credibility, the Court cannot say that irreparable injury will result if an injunction is not issued.

Additionally, the existence of irreparable harm depends on Plaintiff's medical needs. Plaintiff's counsel stated during the May 15, 2019 hearing that Plaintiff will suffer skin breakdown because he is only able to shower every other day, but no medical evidence has been introduced to support that assertion. Plaintiff needs to undergo a medical evaluation to determine what his medical needs are and whether his current conditions are sufficient to meet those needs. No such medical evaluation has taken place.[1] And the Court lacks other evidence that would be helpful in determining whether Plaintiff is living in unhygienic conditions: For example, does Plaintiff have access to running water in his cell? Sufficient facts—and in particular the opinion of a medical professional—are not available for the Court to conclude that Plaintiff is in danger of irreparable harm, so the Court is unable to find for Plaintiff at this time.

## **CONCLUSION**

Plaintiff has not demonstrated a reasonable probability of success on the merits or irreparable injury if a preliminary injunction is not issued. Therefore, Plaintiff's Second Motion for Preliminary Injunction is denied. An appropriate Order will follow.

Date:   5/15/19                                                                      */s/ Anne E. Thompson*
                                                                                      ANNE E. THOMPSON, U.S.D.J.

---

[1] Plaintiff did undergo a medical examination in accordance with the Court's prior Preliminary Injunction Order. (*See* Order at 2.) But, as explained at the May 15, 2019 hearing, that examination apparently did not assess the issues at hand here.